01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE and LAURA SPRINKLE,                              ) | Case No. CV05-1898-JPD |
|        Plaintiffs,                                 ) | |
|      v.                                                    ) | |
|                             ) | ORDER DENYING DEFENDANTS' |
| SB&C LTD, a/k/a Skagit Bonded Collectors, ) | MOTION FOR SUMMARY |
| et al.,                                             ) | JUDGMENT AND GRANTING |
|                             ) | PLAINTIFFS' MOTION FOR |
|        Defendants.                               ) | SUMMARY JUDGMENT |
| _____ ) | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

This is a civil action brought under the Fair Debt Collection Practices Act (FDCPA),

15 U.S.C. § 1692- 1692o, the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§

501-93, the Washington Consumer Protection Act (WCPA), R.C.W. § 19.86 *et seq.*, and the

Washington Collection Agency Act (WCAA), R.C.W. § 19.16 *et seq.*  Plaintiffs Joseph and

Laura Sprinkle are proceeding against SB&C, Ltd., a Washington limited liability company

doing business as Skagit Bonded Collectors (SB&C), and Joseph Cammock, an attorney for

SB&C.  Plaintiffs allege that defendants violated the FDCPA, the SCRA, the WCPA, and the

WCAA when they garnished Mr. Sprinkle's military pay while he was on active military duty.

The present matter comes before the Court upon the parties' cross motions for summary

judgment.  After careful consideration of the motions, supporting materials, governing

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -1

01   authorities and balance of the record, the Court ORDERS that the plaintiffs' motion for

02   summary judgment be GRANTED (Dkt. No. 28), and that the defendants' motion for

03   summary judgment be DENIED (Dkt. No. 21).

04                              II.  FACTS AND PROCEDURAL HISTORY

05          The facts of this case are largely undisputed.  Plaintiffs Joseph and Laura Sprinkle, a

06   married couple, resided in Blaine, Washington, at all times material to this suit.  Dkt. No. 28-

07   5.  Mr. Sprinkle is a member of the United States Army and a former National Guardsman.

08   *Id.*  Mrs. Sprinkle cares for the couple's three children and does not work outside the home.

09   Dkt. No. 23-8 at ¶¶ 2-3.  In November 2003, Mr. Sprinkle was called to active duty and

10   deployed to Riyadh, Saudi Arabia, in February 2004.  *Id.* ¶ 2.  The record reflects that Mr.

11   Sprinkle's active duty term ended on April 20, 2005.  Dkt. No. 23-9.

12          On October 5, 2000, defendant Craig Cammock, a collection attorney acting on behalf

13   of SB&C, filed an action in Whatcom County District Court to recover several debts incurred

14   by plaintiffs.  Dkt. No. 23 at ¶¶ 4-5, Ex. No. 101.  Plaintiffs were served with the complaint

15   but failed to appear, and on December 1, 2000, the state court granted a default judgment.

16   Dkt. No. 23-1 at ¶ 7, Ex. No. 102.

17          On November 4, 2004, Mr. Cammock filed a writ of garnishment in the Whatcom

18   County District Court against plaintiffs' financial institution, the Industrial Credit Union of

19   Whatcom County ("Industrial").  Dkt. No. 23-1 at ¶ 8, Ex. No. 103.  The writ of garnishment

20   forms were served on Industrial by certified mail on November 16, 2004.  Dkt. No. 23-1 at ¶

21   10.  These documents were also served on plaintiffs by certified mail and signed for by Mrs.

22   Sprinkle.  *Id.* ¶ 11, Ex. No. 104.

23          Upon receiving service of the writ of garnishment, Mrs. Sprinkle contacted SB&C to

24   request that the garnishment be released.  Dkt. No. 23 at ¶ 12.  Mr. Sprinkle was on active

25   military duty in Saudi Arabia at this time and only military pay was included in the Industrial

26   account.  Dkt. No. 1 at ¶¶ 6-7.  Mrs. Sprinkle communicated this information to SB&C, but it

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -2

01  refused to release the garnishment.  *Id*. ¶¶ 12-13.  Later that day, plaintiffs' attorney, James

02  Sturdevant, called SB&C and requested that it release the garnishment because it consisted of

03  military pay.  SB&C refused to do so.  On November 18, 2004, SB&C received the answer

04  from Industrial, indicating that the amount sought by the writ, $906.20, was being withheld.

05  Dkt. No. 23-1 at ¶ 15.

06        On November 22, 2004, plaintiffs' counsel contacted Mr. Cammock and requested

07  that SB&C release the garnishment.  SB&C again refused to do so.  Dkt. No. 23-1 at ¶ 15.

08  On November 23, 2004, plaintiff filed a judgment and order to pay amount held by the

09  garnishee, Industrial.  *Id.* ¶ 16.  The next day, the district court entered the order and directed

10  the garnishee to pay.  *Id.* ¶ 17, Ex. No. 106.  On December 6, 2004, Industrial paid the full

11  amount requested, $906.20.  *Id.* ¶ 19.  On December 14, 2004, plaintiffs' counsel filed a

12  formal appearance in the state court proceeding.  Dkt. No. 28 at 6, ¶¶ 5-6.  SB&C filed a

13  satisfaction of judgment on January 17, 2005.  Dkt. No. 32-1 at ¶ 21.

14        On April 13, 2005, plaintiffs filed a motion in Whatcom County District Court to

15  disgorge the funds.  Dkt. No. 23-1 at ¶ 22, Ex. No. 107.  Plaintiffs insisted that the

16  garnishment was void because the garnished funds consisted of Mr. Sprinkle's military pay

17  and that SB&C had failed to file an affidavit in support of the garnishment that showed Mr.

18  Sprinkle was not in the United States Armed Forces, as required by the SCRA ("SCRA

19  Affidavit"), 50 U.S.C. app. § 521(b).  Dkt. No. 23-8, at 3, ¶ 4.  Additionally, plaintiffs argued

20  that because defendants failed to wait the statutory period for the plaintiffs to respond to the

21  garnishment notice, *see* R.C.W. § 6.27.160, they were denied the opportunity to claim an

22  exemption or controvert the garnishment.  *Id.* ¶ 5.  On May 20, 2005, the district court

23  vacated the judgment of garnishment but not the garnishment writ.  Dkt. No. 28-2 at ¶ 5.  The

24  court did not address the SCRA Affidavit issue.  The record is silent on the reason why;

25  however, it appears that when the district court heard the matter, Mr. Sprinkle was no longer

26  a servicemember.  *See* Dkt. No. 23-9 (noting Mr. Sprinkle's active duty was terminated in

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -3

01  April 2005).

02        On July 6, 2005, plaintiffs filed a claim of exemption in Whatcom County District

03  Court.  Dkt. No. 23-1 at ¶ 27, Ex. No. 110; Dkt. No. 23-11.  On August 5, 2005, after a

04  hearing, the court denied the claim of exemption and reinstated the garnishment.  *Id.* ¶ 26, Ex.

05  No. 111.  Plaintiffs initially appealed the state court's order denying the claim of exemption,

06  but later stipulated to a dismissal with prejudice.  Dkt. No. 23-1 at ¶¶ 27-28, Ex. No. 112.

07        On November 15, 2005, plaintiffs filed this action.  Dkt. No. 1.  Defendants' answer

08  asserts several affirmative defenses, including issue and claims preclusion, statute of

09  limitations, and bona fide error.  Dkt. No. 21.

10        Plaintiffs have moved for summary judgment on the issue of liability.  Dkt. No. 28-1.

11  They argue that defendants violated the FDCPA by failing to file a SCRA Affidavit at any time

12  during these proceedings.  They also argue that defendants failed to properly notify them of

13  the judgment and failed to observe the statutory waiting period to allow them to claim an

14  exemption and otherwise respond to the notice of garnishment, both of which they assert

15  violates the WCAA, WCPA, and FDCPA.  *Id.* Plaintiffs' also move to strike certain portions

16  of Mr. Paciotti's declaration in support of the defendants' motion for summary judgment.

17  Dkt. No. 31 at 6.

18        In their cross motion for summary judgment, defendants argue that they were not

19  obligated to serve defendants with a copy of the writ and that the issues sought to be litigated

20  before this Court are barred by the doctrine of collateral estoppel.  In the alternative, they

21  argue that neither defendant violated any of the statutes at issue.  Dkt. No. 21.  Defendants do

22  not contend that a SCRA Affidavit was ever filed.

23                          III.  JURISDICTION

24        The Court has jurisdiction over this matter pursuant to 15 U.S.C. §1692k(d) and 28

25  U.S.C. § 1331 because it constitutes a federal question arising under the FDCPA.

26  Supplemental jurisdiction over plaintiffs' pendant state law claims is proper under 28 U.S.C. §

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -4

01  1367(a).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter

02  heard by the undersigned Magistrate Judge.

03  IV.  SUMMARY JUDGMENT STANDARD

04      "Claims lacking merit may be dealt with through summary judgment" under Rule 56 of

05  the Federal Rules of Civil Procedure.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514

06  (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers

07  to interrogatories, and admissions on file, together with the affidavits, if any, show that there

08  is no genuine issue as to any material fact and that the moving party is entitled to a judgment

09  as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes

10  evidence with which "a reasonable jury could return a verdict for the nonmoving party."

11  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is

12  "material" if it "might effect the outcome of the suit under the governing law." *Id.*

13      When applying these standards, the Court must view the evidence and draw reasonable

14  inferences therefrom in the light most favorable to the nonmoving party.  *United States v.*

15  *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its

16  initial burden by producing affirmative evidence that negates an essential element of the

17  nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence

18  needed to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

19  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

20      Once this has occurred, the procedural burden shifts to the party opposing summary

21  judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on

22  the merits of the case. Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny

23  the veracity of everything offered or show a mere "metaphysical doubt as to the material

24  facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

25  mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual

26  dispute.  *Anderson*, 477 U.S. at 252.  To avoid summary judgment, the nonmoving party

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -5

01  must, in the words of the Rule, "set forth specific facts showing that there is a genuine issue

02  for trial." Fed. R. Civ. P. 56(e).   The nonmoving party's failure of proof "renders all other

03  facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to

04  the summary judgment it sought. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

V.  ANALYSIS

A.   The Preclusion Doctrines Do Not Require Dismissal

"Federal courts are required to give full faith and credit to state court judgments under

28 U.S.C. § 1738." *Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d

1022, 1031 (9th Cir. 2005) (citing *San Remo Hotel, L.P. v. City & County of San Francisco*,

545 U.S. 323, (2005)).  To determine the preclusive effect of a state court judgment, federal

courts must look to the law of the forum state.  *Id.*   Washington law recognizes the

affirmative defenses of res judicata and collateral estoppel, otherwise known as claim

preclusion and issue preclusion.  *Rains v. State*, 100 Wn.2d 660, 663-64, 674 P.2d 165, 168-

69 (1983).  While claim preclusion and issue preclusion compliment each other, *see*

*Restatement (Second) of Judgments*, Introductory Note 249 (1982), there is a distinction

between the two doctrines.  Claim preclusion "bars all grounds for recovery which could have

been asserted, whether they were or not, in a prior suit between the same parties on the same

cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).  Issue

preclusion, on the other hand, bars only those issues actually raised and finally adjudicated in

previous litigation between the same parties. *Id.*; *see also Dodd v. Hood River County*, 136

F.3d 1219, 1245 (9th Cir. 1998).

Although defendants' motion for summary judgment addresses only the latter doctrine,

both defenses were affirmatively pleaded in answer to the plaintiffs' complaint.  Defendants

argue that the exemption and garnishment procedures issues were fully litigated and finally

decided in Whatcom County District Court and as a result, plaintiffs are precluded from

relitigating the same in federal court.  Dkt. No. 21-1 at 8-9.  Plaintiffs disagree, contending

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -6

01  that defendants' failure to file a SCRA Affidavit (thus violating FDCPA, WCAA and WCPA),

02  failure to serve plaintiffs with a copy of the judgment and order to pay the amount held by the

03  garnishee, and failure to wait the statutory period under R.C.W. § 6.27.160 for the plaintiffs

04  to respond to the garnishment notice are all claims that can be heard by this Court. For the

05  following reasons, the Court finds that the first argument is not precluded by res judicata or

06  collateral estoppel, but that the second and third issues are.[1]

07          1.    *Claim Preclusion*

08          Claim preclusion "treats a judgment, once rendered, as the full measure of relief to be

09  accorded between the same parties on the same claim or cause of action." *McClain v.*

10  *Apodaca*, 793 F.2d 1031, 1033 (9th Cir.1986). As such, it bars all grounds of recovery which

11  were or could have been asserted in the previous action. *Loveridge v. Fred Meyer, Inc.*, 125

12  Wn.2d 759, 763, 887 P.2d 898, 900 (1995). Under Washington law, claim preclusion "occurs

13  when a prior judgment has a concurrence of identity in four respects with a subsequent action.

14  There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and

15  (4) the quality of the persons for or against whom the claim is made." *Rains*, 100 Wn.2d at

16  663, 674 P.2d at 168.

17

18          [1] Plaintiffs' second and third arguments are also precluded by the *Rooker-Feldman*

19  doctrine to the extent they seek "appellate" review in federal court of a state court's judgment.
    *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), *and District of Columbia Court of*

20  *Appeals v. Feldman*, 460 U.S. 462 (1983) (barring federal court plaintiffs from receiving
    appellate review of a state court decision); *see also Manufactured Home Communities, Inc. v.*

21  *City of San Jose*, 420 F.3d 1022, 1029 (9th Cir. 2005) ("*Rooker-Feldman* doctrine stands for
    the proposition that a federal district court does not have subject matter jurisdiction to hear a

22  direct appeal from the final judgment of a state court.") (internal quotation omitted). The same
    cannot be said for the plaintiffs' first argument, for when a debtor brings action under the

23  FDCPA, the action does not complain of the state court judgment itself. Instead, it challenges
    the debt collection practices that led to the judgment. Thus it follows that the debtor may

24  prevail without inviting review of the state court judgment. *See Todd v. Weltman, Weinberg &*

25  *Reis Co.*, 434 F.3d 432, 435-36 (6th Cir. 2006); *Sanftle v. Landau*, 390 F. Supp. 2d 463,

26  468-69 (D. Md. 2005).

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -7

01    In the present case, there is little dispute that the parties and general subject matter are

02 the same, apart from the fact that the garnishee, Industrial, is no longer a party and the

03 attorney for SB&C is a named defendant.  That is, Joseph and Laura Sprinkle are involved in

04 litigation against SB&C regarding the validity of the garnishment action instituted by SB&C in

05 state court.  The critical issue is whether plaintiffs' *claims* in this case are identical to those

06 brought in the state court action, which concluded with findings of nonexempt status as to

07 former defendants Joseph and Laura Sprinkle and a judgment against garnishee defendant

08 Industrial, upon which a collection was made.[2]

09    Two claims may be identical for claim preclusion purposes even where the second case

10 contains additional facts or legal theories not asserted in the first.  *Costantini v. Trans World*

11 *Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982); *see also Clark*, 966 F.2d at 1320 (noting that

12 claim preclusion "bars all grounds for recovery which could have been asserted . . . in a prior

13 suit between the same parties on the same cause of action.") (emphasis added).  The Ninth

14 Circuit addresses four factors to determine whether two given claims are identical, the fourth

15 of which it has termed "the most important," qualified by the reminder that "[n]o single

16 criterion can decide every res judicata question":

17         (1) whether rights or interests established in the prior judgment would be
          destroyed or impaired by prosecution of the second action; (2) whether
18         substantially the same evidence is presented in the two actions; (3) whether the
          two suits involve infringement of the same right; and (4) whether the two suits
19         arise out of the same transactional nucleus of facts.

20 *Costantini*, 681 F.2d at 1201-02 & n.7 (quotation omitted); *see also Abramson v. Univ. of*

21 *Hawaii*, 594 F.2d 202, 206 (9th Cir. 1979) (cautioning that identity of causes of action

22 "cannot be determined precisely by mechanistic application of a simple test"); *Feminist*

23

24         [2]  The plaintiffs have now abandoned the claim of exemption from garnishment. *See*
25 Dkt. No. 31 at 2 ¶ 2.  Had they not done so, the Court would find this claim precluded under
   both doctrines, not to mention the *Rooker-Feldman* doctrine.  *See* Dkt. No. 23-1 at ¶ 26, Ex.
26 No. 111 (ordering denying claims of exemption after hearing on the matter).

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -8

01  *Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 867, 868 (9th Cir. 1995) ("The Washington

02  Supreme Court has acknowledged that there is no simple test for determining whether causes

03  of action are sufficiently identical. . . .  The relevant factors are closely related and necessarily

04  overlap.").

05        The Court finds that the present garnishment procedure claims brought by the

06  plaintiffs are not identical to the claims disposed of by the Whatcom County District Court.

07  *Cf. Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (res judicata

08  applies whenever there is an identity of claims, a final judgment on the merits of those claims,

09  and an identity or privity between parties); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*,

10  754 F.2d 1524, 1529 (9th Cir. 1985) (same).  The state court proceeding involved questions

11  of whether military pay was per se exempt from garnishment, as well as whether there was

12  proper service.  The court did not consider whether a SCRA Affidavit was a necessary

13  component of the action against the Sprinkles and whether, in its absence, SB&C committed a

14  violation of the Fair Debt Collection Practices Act.  The plaintiffs' FDCPA arguments were

15  neither raised nor decided by the Whatcom County District Court.  The present lawsuit

16  challenges debt collection practices that *led* to the judgment, not the judgment itself.[3]

17        The present federal question lawsuit focuses on adjudicative facts completely

18  unaddressed by that court—i.e., claims asserting infringement of different federal and state

19  law rights.  In sum, the plaintiffs' FDCPA, WCAA and WCPA arguments (as they relate to

20  the SCRA Affidavit) simply do not involve "a second assertion of the same claim or cause of

21  action." *Rains*, 100 Wn.2d at 665, 674 P.2d at 169; *see also generally* RICHARD D. FREER &

22  WENDY C. PERDUE, CIVIL PROCEDURE 651 (4th ed. 2005) ("Claim preclusion stands for the

23  proposition that a claimant may only *sue on a single claim* or 'cause of action' once.")

24  _____

25        [3]  According to the complaint, part of the plaintiffs' damages consists of the funds which
    were garnished. Dkt. No. 1 at 8, ¶ B.  Disgorgement of the actual funds garnished would be
26   precluded under the Court's analysis.

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -9

01  (emphasis added).  Accordingly, plaintiffs' FDCPA, WCAA and WCPA claims are not

02  precluded by the doctrine of res judicata.

03                    2.    *Issue Preclusion*

04          Collateral estoppel, or issue preclusion, "prevents a second litigation of issues between

05  the parties, even though a different claim or cause of action is asserted." *Christensen v. Grant*

06  *County Hosp. Dist 1*, 152 Wn.2d 299, 306, 96 P.3d 957, 961 (2004) (quoting *Rains*, 100

07  Wn.2d at 665, 674 P.2d at 169).  It applies when an issue of ultimate fact has been determined

08  by a valid and final judgment.  *State v. Tili*, 148 Wn.2d 350, 360, 60 P.3d 1192, 1197 (2003).

09  Under Washington law, the party asserting the doctrine bears the burden of proving the

10  following:  (1) the issue decided in the prior adjudication is identical with the one presented in

11  the current action; (2) the prior adjudication concluded in a final judgment on the merits; (3)

12  the party against whom the plea is asserted was a party or in privity with a party to the prior

13  adjudication; and (4) the application of the doctrine will not work an injustice on the party

14  against whom the doctrine applies.  *Accord Spahi Southcenter Joint Venture v. Nat'l*

15  *Democratic Policy Comm.*, 113 Wn.2d 413, 418, 780 P.2d 1282, 1284 (1989).  The "focus

16  [is] on whether the parties to the earlier proceeding had a full and fair hearing on the issue."

17  *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600, 602 (2001).

18          For reasons similar to those stated above, the doctrine of issue preclusion—as it

19  relates to plaintiffs' argument that failure to file a SCRA Affidavit violates the FDCPA—is

20  likewise unavailing.  Having reviewed Judge Matthew S. Elich's November 30, 2004

21  Judgement and Order to pay the amount held by garnishee, Judge David M. Grant's May 20,

22  2005 Judgment vacating the November 30 judgment but not the garnishment writ, and Judge

23  Grant's August 5, 2005 Order Denying Defendants' Claim of Exemption, it is clear to this

24  Court that the only issues adjudicated were the judgment of garnishment against Industrial,

25  the garnishee, and the claim of exemption filed by Mr. and Mrs. Sprinkle.  *See Brown v.*

26  *Mason*, --- F. Supp. 2d ---, 2006 WL 2167080, *2 (E.D. Wash. 2006) (performing similar

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -10

01  review of state court orders to determine precluded issues).  The issues being litigated today

02  consist of both law and facts distinct from the issues decided in the prior state court

03  adjudication.  *See Tili*, 60 P.3d at 1197.  For example, the plaintiffs' cause of action under the

04  FDCPA stems not from the putative exempt status of the nature of the funds in the

05  account—the arguments made to and decided by the Whatcom County District Court—but

06  rather, from allegations that defendants failed to file the SCRA Affidavit and the effect of that

07  failure.  This issue was entirely unaddressed by the state court.  *Cf. Christensen*, 152 Wn.2d at

08  306, 674 P.2d at 961 ("[C]ollateral estoppel is intended to prevent *retrial* of one or more of

09  the crucial issues or determinative facts *determined* in previous litigation.") (emphasis added).

10      The ultimate issue of fact in the present matter is not the judgment itself, but rather,

11  the debt collection practices that led to that judgment.  *See supra*, n.3.  Thus, no identity of

12  issues exists.  *See Rains*, 100 Wn.2d at 665, 674 P.2d at 169.   Furthermore, Defendants have

13  not ushered any facts supporting the contention that the garnishment procedures and unlawful

14  collection arguments made under the FDCPA, WCAA and WCPA were finally adjudicated by

15  the state court.

16          B.      State Garnishment Procedures

17      Garnishment is a statutory remedy which contemplates the existence of three distinct

18  parties, each performing a distinct role in a prescribed series of events:  a writ of garnishment

19  directs a third person, the garnishee, not to deliver money or property of judgment debtor, but

20  to appear and answer the judgment creditor's writ of garnishment.  *See generally* R.C.W. §§

21  6.27.005, .060, .070.  R.C.W. § 6.27 outlines the procedures for issuance and enforcement of

22  a writ of garnishment.

23      A creditor who chooses to avail itself of the garnishment process must utilize the

24  methods of enforcement specifically provided by applicable state statutes.  *Boundary Dam*

25  *Constructors v. Lawco Contractors, Inc.*, 9 Wn.App. 21, 25, 510 P.2d 1176, 1179 (1973).  In

26  Washington, a creditor seeking a writ of garnishment must submit an affidavit stating:  (1) that

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -11

01 the creditor has an unsatisfied judgment in the court in which it seeks the writ; (2) the amount

02 alleged due under the judgment; (3) that the creditor believes the garnishee is indebted to the

03 debtor in amounts exceeding those exempted from garnishment by state or federal law, and

04 (4) whether the garnishee is the debtor's employer. R.C.W. § 6.27.060. If the application

05 complies with the statutory requirements, the clerk must docket the case and issue a writ of

06 garnishment commanding the garnishee to answer the writ within twenty days. *Id.* §

07 6.27.070. In its answer, the garnishee must provide information about the funds or property

08 of the debtor in its control and the amount it owed the debtor at the time of service of the

09 writ. *Id.* § 6.27.190. Thereafter, either the creditor or defendant debtor may controvert the

10 garnishee's answer by filing an affidavit, to which the garnishee may respond by affidavit. *Id.*

11 §§ 6.27.210, .220. Upon the expiration of the time for filing the garnishee's response, any

12 party may note the matter for a hearing to determine if there is an issue for trial. *Id.* §

13 6.27.220. If the garnishee was indebted to the debtor in any amount at the time of service of

14 the writ of garnishment, the creditor is entitled to judgment against the garnishee for the

15 amount it owes to the debtor. *Id.* § 6.27.250(1)(a).

16               1.    *Defendants Violated the Servicemembers Civil Relief Act*

17         The Servicemembers Civil Relief Act (SCRA), formerly the Soldiers and Sailors Civil

18 Relief Act of 1940,[4] "was created to allow for the suspension of civil actions for those persons

19 in the military in order to allow military personnel to devote their entire energy to the defense

20 of the nation." *Bernhardt v. Alden Café*, 864 A.2d 421, 425 (N.J. Super. App. Div. 2005)

21 (internal quotation omitted); 50 U.S.C. app. § 502. The Act has long been liberally construed

22 to protect those men and women who drop their own affairs to take up the burdens of their

23

24      [4] The Soldiers and Sailors Civil Relief Act of 1940 was substantially amended in 1991

25 and renamed the Servicemembers Civil Relief Act by the 2003 amendments. *See* Pub. L. No.
108-189, 117 Stat. 2835 (2003). The 2003 amendments provided that the SCRA applies in any

26 case that is not final before December 19, 2003, the date of reenactment. *Id.* § 3, Stat. at 2866.

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -12

01   country.  *Boone v. Lightner*, 319 U.S. 561, 574 (1943); *Conroy v. Aniskoff*, 507 U.S. 511,

02   516 & n.9 (1993).   It applies in times of peace and war, protecting the career officer as well

03   as the temporary soldier.  *Omega Indus., Inc. v. Raffaele*, 894 F. Supp. 1425, 1434 (D. Nev.

04   1995).  Both servicemembers and their dependents qualify for protection under the SCRA.  50

05   U.S.C. app. § 511(4).

06           Among the expansive protections provided by the SCRA are §§ 522 and 524, which

07   provide for a stay of proceedings in certain circumstances, and § 521(b)(1), which requires the

08   plaintiff to file an affidavit "stating whether or not the defendant is in military service and

09   showing necessary facts to support the affidavit."  50 U.S.C. app. § 521(b)(1).  Such an

10   affidavit is a prerequisite to the entry of judgment for the plaintiff creditor, save in one narrow

11   instance.  *Id.*  "A servicemember who applies for a stay under [§ 522] and is unsuccessful may

12   not seek the protections afforded by . . . section 521." *Id.* § 522(e).

13           The defendants insist that SCRA § 521 is inapplicable because judgment was taken

14   against the garnishee, Industrial, not against Mr. and Mrs. Sprinkle, the state court defendants.

15   Dkt. No. 37-1 at 9, ¶ 2.  The Court disagrees that this renders § 521 inapplicable for two

16   reasons.  First, § 521(b)(1) requires a SCRA Affidavit to be filed "before entering judgment

17   *for the plaintiff*"—here, SB&C in Whatcom County District Court—not before entering

18   judgment *against* a defendant.  50 U.S.C. app. § 521(b)(1) (emphasis added).   Because there

19   is no dispute that the Whatcom County District Court entered a judgment for SB&C, in its

20   November 23, 2004 order, the SCRA Affidavit requirement is triggered as a matter of law.

21   *See* Dkt. No. 23-7 at 2 (awarding judgment for plaintiff against defendant garnishee in the

22   amount of $906.20).   Second, SB&C also recovered a judgment against the Sprinkles by the

23   same judgment and order against the garnishee, for its recoverable costs and accrued interest.

24   *See* Dkt. No. 23-7 at 2; *see also* 50 U.S.C. app. § 511(9) (defining "judgment" as "any

25   judgment decree, order, or ruling, final or temporary").   In sum, because the Whatcom County

26   District Court both entered judgment for the plaintiff SB&C *and* took judgment directly

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -13

01 against state court defendants Mr. and Mrs. Sprinkle, a SCRA Affidavit analysis was required.

02      The parties agree that no SCRA § 521(b)(1) affidavit was ever filed by defendants

03 SB&C and Mr. Cammock.  In addition, there is no dispute that Mr. Sprinkle's entire bank

04 account was garnished while he was deployed oversees.  Dkt. No. 23-8 at ¶¶ 2-3; Dkt. No.

05 28-5 at ¶¶ 3-4 (deposition of Joe Sprinkle) ("I was in Saudi Arabia at the time.  I had no

06 knowledge of the garnishment until the day the garnishment took effect.").  Next, the

07 defendants concede that an appearance was not made by plaintiffs until after judgment was

08 entered by the Whatcom County District Court, triggering the applicability of § 521.  *See* Dkt.

09 No. 37-1 at 21 n.5; 50 U.S.C. app. § 521(a) ("This section applies to any civil action or

10 proceeding in which the defendant does not make an appearance.").  Finally, the record is

11 devoid of evidence that plaintiffs requested a stay of the garnishment proceedings prior to

12 entry of the judgment, making the narrow exception of § 522(e) inapplicable and the SCRA

13 affidavit mandatory.  *See* 50 U.S.C. app. § 522(e) (noting that a "servicemember who *applies*

14 for a stay under this section *and is unsuccessful* may not seek the protections afforded by . . .

15 section 521") (emphasis added).

16      Accordingly, the Court concludes that there are no genuine issues of material fact that

17 the defendants violated the Servicemembers Civil Relief Act.  The question remaining, then, is

18 whether defendants' violation of SCRA § 521(b)(1) constitutes a violation of the Fair Debt

19 Collection Practices Act.  The Court finds that in this instance it does.

20               2.   *Defendants Violated the Fair Debt Collection Practices Act*

21      "In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair

22 debt collection practices sometimes used by debt collectors against consumers." *Turner v.*

23 *Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004); 15 U.S.C. § 1692; *see also* S. Rep. No. 95-382,

24 at 1 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (noting purpose of FDCPA is "to

25 protect consumers from a host of unfair, harassing, and deceptive debt collection practices");

26 *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (noting FDCPA was enacted

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -14

01 "to eliminate abusive debt collection practices which contribute to the number of personal

02 bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. .

03 . [and] to guarantee that consumers would receive adequate notice of their rights under the

04 law"). Accordingly, the FDCPA broadly enumerates several practices considered contrary to

05 these goals, and forbids debt collectors from taking such action.[5] The Ninth Circuit recently

06 confirmed that "the FDCPA a strict liability statute." *Clark v. Capital Credit & Collection*

07 *Servs., Inc.*, --- F.3d ---, 2006 WL 2441705, *9 (9th Cir. Aug. 24, 2006).

08 The FDCPA states that "[a] debt collector may not use any false, deceptive, or

09 misleading representation or means in connection with the collection of any debt," 15 U.S.C.

10 § 1692e, and provides a non-exhaustive list of conduct that violates the FDCPA, including

11 "[t]he threat to take any action that cannot legally be taken" and "[t]he use of any false

12 representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §§

13 1692e(5), e(10). Whether a communication or other conduct violates the FDCPA is

14 determined by analyzing it from the prospective of the "least sophisticated debtor"—that is,

15 would the least sophisticated debtor construe the collector's conduct as a threat to take, or

16 the actual taking of, unlawful action in connection with a debt? *Clark*, --- F.3d ---, 2006 WL

17 2441705 at *5; *see also Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1006

18 (D. Ariz. 1998) (noting that the "least sophisticated debtor" standard is a "low standard").

19 Because the FDCPA is a remedial statute, it must be construed liberally in favor of the debtor.

20 *Clark*, --- F.3d ---, 2006 WL 2441705 at *9 (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117

21 (10th Cir. 2002)). The Act allows aggrieved parties to recover damages, attorney's fees and

22 costs. 15 U.S.C. § 1692k(a).

23 Defendants have moved for summary adjudication stating that they were in full

24

25 ────────────────────

26     [5]  Attorneys engaged in the collection of debts are debt collectors subject to liability under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -15

01   compliance with the FDCPA, while plaintiffs allege that defendants violated 15 U.S.C. §

02   1692e(5) and e(10).  Although plaintiffs have abandoned their theory that garnishment of

03   military pay constitutes a per se violation of the FDCPA, they contend that state garnishment

04   procedures and federal debt collection practice standards are violated in this circumstance

05   because SB&C garnished the Sprinkles' bank account, knowing Mr. Sprinkle was in the

06   military and deployed overseas, and did not file a SCRA Affidavit.

07          Although few reported cases exist on this topic, some suggest that 15 U.S.C. §

08   1692e(5) protection encompasses only a "threat" to take action that could not be legally

09   taken, but the not the performance of the illegal act itself.  *See, e.g.*, *Morgan v. Credit*

10   *Adjustment Bd., Inc.*, 999 F. Supp. 803, 807 (E.D. Va. 1998) (collection notice violates §

11   1692e(5) only if "a debtor would reasonably believe that the notice threatens legal action and .

12   . . the debt collector does not intend to take legal action").   This Court declines to adopt such

13   a myopic definition of § 1692e(5) and instead concurs with those courts which have

14   interpreted this section to include the *taking* of "action that cannot legally be taken." 15

15   U.S.C. § 1692e(5); *see, e.g.*, *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001,

16   1006 (D. Ariz. 1998).  In *Marchant*, the court confronted the argument that § 1692e(5) is not

17   violated when a debt collection officer performs, rather than merely threatens, unlawful

18   activity under the FDCPA.  *See Marchant*, 12 F. Supp. 2d at 1004 (involving a non-lawyer's

19   unlawful completion of an application for a writ of garnishment).   Rejecting this argument, the

20   court found such conduct to constitute a "threat" within the meaning of the Act:

21          [T]he defendants argue that, even if such action was the unauthorized practice
             of law, it did not violate § 1692e(5) of the FDCPA.  That section prohibits the
22          use of a "threat" to take "action that cannot legally be taken."  The defendants
             assert that they made no threat; they simply took action.  I think that such
23          argument elevates form over substance.  To argue that a collection agency can
             avoid the strictures of the FDCPA simply by acting where it has no legal
24          authority, as opposed to threatening to act where it has no legal authority,
             would defy the very purposes of the section.
25
     *Id.* (granting summary judgment in the plaintiff's favor on this issue).
26

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -16

01          Similarly, other courts have recognized the futility of a statutory scheme that would

02     provide *more* protection to debt collectors who violate the law than to those who merely

03     threaten or pretend to do so.  *Cf. Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th

04     Cir. 1997) (finding "no longer any dispute" that act of filing suit was the taking of an "action

05     that cannot legally be taken," and thus a clear violation of § 1692e(5)).  The opposite

06     conclusion would be akin to attaching liability to one who merely threatens a tortious act

07     while absolving one who unabashedly completes it.  It is safe to say that such an interpretation

08     veers sharply from the legislative purpose behind the FDCPA.

09          Strikingly similar to the circumstances in *Marchant* and *Poirer*, it is beyond dispute

10     that when defendants continued to advance their garnishment action against plaintiffs and

11     Industrial, knowing full well Mr. Sprinkles's status as a deployed servicemember yet declining

12     to file the requisite SCRA affidavit, defendants took action that could not legally be taken

13     under 15 U.S.C. § 1692e(5).

14          This Opinion does not mean to suggest that any procedural irregularity in connection

15     with the collection of a debt is automatically converted into a violation of the FDCPA.

16     However, what happened in this case is far more than a mere procedural irregularity.

17          In response to the increased demands placed on military personnel as a result of the

18     wars in Iraq and Afghanistan, Congress substantially amended the SCRA in 2003.  Section §

19     521(b)(1) was amended to *require* filing of a SCRA Affidavit before a judgment of any kind

20     could be entered for that party, and § 521(b)(2) was amended to *require* the court to appoint

21     counsel for any debtor that "appears [to be] in military service."  *See* 50 U.S.C. app. § 521(b).

22     *Compare* 50 U.S.C. app. § 521(b) (2006), *with* 50 U.S.C. app. § 520(1) (2002) (obviating the

23     SCRA Affidavit if debtor could "secur[e] an order of court directing [the entry of judgment],"

24     and allowing court, "*on application*" by a party, to make an appointment of counsel for the

25     debtor) (emphasis added).

26          Mr. Sprinkle was a member of the military on active duty in the Mideast at all times

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -17

01  pertinent, and is exactly the person Congress meant to protect.  Mr. Sprinkle heard of the

02  garnishment only after it occurred while he was on duty in Saudi Arabia.  Congress certainly

03  was aware of the impact that such actions could have on diverting the attention of service

04  members, as the stated purpose of the SCRA was to "provide for, strengthen, and expedite

05  the national defense through protection . . . to servicemembers of the United States to enable

06  such persons to devote their entire energy to the defense needs of the Nation."  50 U.S.C.

07  app. § 502(1).  The defendants were made aware of Mr. Sprinkle's servicemember and

08  deployed status, yet failed to take any ameliorative steps to ensure compliance with the law.

09                    2.    Washington Collection Agency Act, Washington Consumer
                            Protection Act
10

11          Finally, plaintiffs contend that defendants' failure to file the requisite affidavit under

12  SCRA § 521(b)(1) violates the Washington Collection Agency Act (WCAA) and Washington

13  Consumer Protection Act (WCPA).

14          The WCAA requires licensing of debt collection agencies and places specific

15  restrictions on debt collection practices.  *Watkins v. Peterson Enters, Inc.*, 57 F. Supp. 2d

16  1102, 1109 (E.D. Wash. 1999).  Plaintiffs have brought a WCAA claim against defendant

17  SB&C under R.C.W. § 19.16.250(15), which prohibits a licensee or an employee of a licensee

18  from "[t]hreaten[ing] to take any action against the debtor which the licensee cannot legally

19  take at the time the threat is made." *Id.* § 19.16.250(15).[6]  Noting the similarities between

20  this provision and § 1692e(5) of the FDCPA, the Court finds that, for the reasons stated

21  above, defendant SB&C has also violated § 19.16.250(15) of the WCPA.  Moreover, because

22  violations of the WCAA constitute per se unfair trade practices under the Washington

23  Consumer Protection Act (WCPA), that statute, too, has been violated.  *Hansen v. Ticket*

24  _____

25          [6]  Plaintiffs have abandoned their WCAA claim against defendant Cammock, and appear
        to have attempted to move for a voluntary non-suit under Fed. R. Civ. P. 41(a) as to that claim.
26      *See* Dkt. No. 31, at 4, ¶ 6.

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -18

01 | *Track, Inc*., 280 F. Supp. 2d 1196, 1202 (W.D. Wash. 2003) (Pechman, J.) ("It is undisputed

02 | that violations of RCW 19.16.250 also constitute violations of the Washington Consumer

03 | Protection Act, RCW 19.86.20.").

04 | VI.  CONCLUSION

05 | For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED.

06 | Dkt. No. 28.  Defendants' motion for summary judgment is DENIED.  Dkt. No. 21.  As a

07 | result of the Court's decision, defendants' motion for sanctions is DENIED,  Dkt. No. 33-1,

08 | and plaintiffs' motion to strike certain portions of Mr. Paciotti's declaration is DENIED.  Dkt.

09 | No. 31 at 6.

10 | DATED this 18th day of September, 2006.

11

12

13 | *James P. Donohue*

14 | JAMES P. DONOHUE
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
PAGE -19